IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L.B., a minor, )
  by her Next Friend Keven Berry; and )
A.N., a minor, )
  by his Guardian Ad Litem, Amy D. DeWald, )
)
Plaintiffs, )
)
v. )     Case No. 25-1086-JWL
)
THE PRINCETON EXCESS AND SURPLUS )
  LINES INSURANCE COMPANY, )
)
Defendant. )
)
_____ )

## **MEMORANDUM AND ORDER**

In this garnishment action, which was removed from state court, a judgment creditor (hereinafter "plaintiff") seeks to recover insurance proceeds from garnishee The Princeton Excess and Surplus Lines Insurance Company ("Princeton"), the insurer of the judgment debtor. This matter presently comes before the Court on three motions filed by plaintiff: a motion to strike certain documents (Doc. # 8); a motion to remand the case to state court (Doc. # 6); and an amended motion for default judgment, which plaintiff originally filed in state court (Doc. # 11). For the reasons set forth below, the Court **denies** all three motions.[1] The Court also realigns the parties in accordance with their interests in the suit, with the

_____

[1] The Court also denies plaintiff's original motion for default judgment (Doc. # 10) as moot in light of the filing of the amended motion.

judgment creditor and the judgment debtor acting as plaintiffs and insurer Princeton acting as defendant in the case, as set forth in the caption above.  Finally, the Court orders further pleadings as follows: on or before **July 30, 2025**, plaintiff shall file an amended complaint setting forth her legal claims against Princeton; and Princeton shall file its answer or otherwise respond to the amended complaint within **21 days** after its filing.

## I.    <u>Background</u>

In 2021, plaintiff L.B., a minor, brought suit in Kansas state district court (through her Next Friend, Keven Berry) against another minor, A.N., and a residential foster care facility, based on the underlying allegation that in January 2021 A.N. assaulted L.B. at the facility.  After plaintiff reached a settlement with the facility, plaintiff's tort claim against A.N. was tried to the court in November 2024; and the court found in favor of plaintiff and awarded damages in the amount of $25,000,000.

On March 26, 2025, the state court entered an order of garnishment to attach any funds, up to $27,500,000, owed by insurer Princeton to A.N., the judgment debtor, pursuant to an insurance policy.  According to a proof of service filed in state court by the Kansas Commissioner of Insurance, the Commissioner received from plaintiff on March 31, 2025, the order of garnishment and a form answer; and the Commissioner served those documents on Princeton pursuant to K.S.A. § 40-2002, *et seq.*, by mailing them to Princeton at a particular address on April 1, 2025.  The documents were returned to the Commissioner as undeliverable, and on April 14, 2025, the Commissioner sent the documents to Princeton at the correct address by certified mail, with a letter from the

Commissioner dated April 11. The instructions to the garnishee included in the mailing stated that Princeton was to complete the form answer within 14 days after service of the garnishment order on it, and it was then to send a copy of the answer to the judgment creditor and the judgment debtor (but not to the clerk of the district court). On April 21, 2025, Princeton received the garnishment order and form answer (with instructions) that the Commissioner sent by certified mail. On April 28, 2025, Princeton sent its completed answer to plaintiff.

On April 25, 2025, plaintiff filed in the state court a motion for default judgment, in which she argued that service had been made on Princeton on April 11 and that Princeton was in default because it failed to "file an answer" by the due date of April 18 (although she cited a 14-day answer period under K.S.A. § 60-736). On April 28, 2025, plaintiff filed in the state court an amended motion for default judgment, based on the same argument. On May 2, 2025, Princeton removed the case to this Court on the basis of diversity jurisdiction.

Plaintiff filed in this Court a motion to strike all pleadings filed in this action by Princeton, and she filed a motion to remand the case to state court. Princeton filed briefs in response to those motions, plaintiff filed supporting briefs in reply, and those motions are now ripe for ruling. In addition, after the parties filed response and reply briefs relating to the amended motion for default judgment, the Court granted Princeton's motion for additional briefing on the motion; each side then filed another brief, and that motion too is ripe for ruling.

## II.    <u>Motion for Remand</u>

### A.    *Timeliness of Removal*

In seeking remand, plaintiff first argues that Princeton's removal of the case on May 2, 2025, was untimely. The provision on which plaintiff relies requires the notice of removal to be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *See* 28 U.S.C. § 1446(b)(1). Plaintiff argues that service on Princeton of the order of garnishment was accomplished on March 31, 2025, when she sent the order and form answer to the Commissioner, pursuant to K.S.A. § 40-2002. If indeed Princeton is deemed to have received the order through service on March 31, then its removal 32 days later on May 2 would be untimely. The removal would be timely, on the other hand, if the removal clock under Section 1446(b)(1) is deemed to have started running only upon Princeton's receipt of the order on April 21 or at the time Princeton delivered its answer on April 28.

The Court is persuaded to follow recent decisions from this district, and it therefore concludes that Princeton's 30-day removal period did not start on March 31, for multiple reasons. In *Handshumaker v. Vangilder*, 2015 WL 5032054 (D. Kan. Aug. 25, 2015), the court rejected this same argument that the removal clock starts upon delivery of a garnishment order to the Commissioner of Insurance. *See id.* at *1-2. The court noted that "the clear weight of authority now holds that service of the pleading upon a statutory agent does not start the thirty-day period." *See id.* at *2 (citing cases). The court continued as follows:

4

> The rationales supporting this view [of the weight of authority] include an assertion that the statute requires actual as opposed to constructive notice, and the fact that a statutory agent, unlike an agent-in-fact, has limited power and is intended to be a mere conduit for transmitting the relevant papers.
>
> The court concludes that the better rule is that service upon a statutory agent such as the Kansas Insurance Commissioner does not constitute "receipt by the defendant" within the meaning of § 1446(b). This view is in accord with the overwhelming majority of district courts to have decided the issue and will thus promote uniformity in application of the statute. It is also consistent with the Supreme Court's observation that Congress enacted this provision "to ensure than the defendant would have access to the complaint before commencement of the removal period."

*See id.* (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352 (1999)).

In *Handshumaker*, the plaintiff seeking remand relied on a previous case from the district, *Ortiz v. Biscanin*, in which the court deemed service on the Insurance Commissioner to be sufficient; but the *Handshumaker* court chose not to follow that case, noting that the *Ortiz* court had cited no authority, that the court had not addressed the significant number of cases from other jurisdictions running to the contrary, and that much of the relevant caselaw had emerged since *Ortiz* was decided. *See id.* (citing *Ortiz v. Biscanin*, 190 F. Supp. 2d 1237 (D. Kan. 2002)). Similarly, plaintiff here relies on *Vera v. Lumbermen's Mutual Casualty Co.*, 2004 WL 957837 (D. Kan. Jan. 26, 2004), in which the same judge who decided *Ortiz* again stated that the 30-day removal clock runs upon service on the Commissioner in a garnishment action, *see id.* at *1-2; but that case is no more persuasive than *Ortiz*, as the court in *Vera* cited only its prior opinion in *Ortiz* and again failed to address the weight of authority to the contrary. *See id.*

This Court concludes that the removal clock should not start until actual receipt by the defendant, as the court held in *Handshumaker*. The clear weight of authority continues to hold that the removal clock does not run from service on a statutory agent. *See* 14C Charles A. Wright, et al., *Federal Practice and Procedure* § 3731 (it is "settled law" that the removal time runs only when the defendant or an agent-in-fact receives notice via service, not upon service on a statutory agent). Moreover, as the court in *Handshumaker* noted, such interpretation comports with the Supreme Court's statement that the removal statute was enacted in this form "[t]o ensure that the defendant would have access to the complaint *before commencement of the removal period*." *See Murphy Bros.*, 526 U.S. at 351-52 (emphasis added). Under plaintiff's interpretation, with the removal period beginning upon service on the Commissioner, a statutory agent for the purpose of service of process, a defendant would not have the full 30 days in which to decide whether to remove the case, and the period could even expire before the defendant actually receives notice of a claim against it, if for example problems occurred with the statutory agent's transmission of the documents to the defendant (as occurred in the present case).

Plaintiff attempts to limit the holding of *Handshumaker* to that case's particular facts, and she seeks to distinguish that case from the present case, in which, plaintiff argues, Princeton failed to maintain a correct address with the Commissioner's office. Plaintiff has not addressed the clear weight of authority opposed to her position, however; nor has she cited any recent authority adopting her interpretation. The Court therefore follows the overwhelming weight of authority in holding that plaintiff's service upon the

Commissioner of the garnishment order did not start the 30-day period in which Princeton was required to remove the case to federal court.

The case of *Gruber v. Estate of Marshall*, 229 F. Supp. 3d 1245 (D. Kan. 2017), provides another reason to find the removal timely here. In that case, the court held that a garnishment action in Kansas state district court first became removeable, and therefore the 30-day removal clock started, when the garnishee served its answer denying liability, because only then would realignment be required for diversity purposes (thus allowing for complete diversity, with the Kansas judgment-debtor realigned to the plaintiff side). *See id.* at 1248-53; *see also* 28 U.S.C. § 1446(b)(3) ("if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removeable"). In her reply, plaintiff again tries to limit the case's holding to its facts (even though plaintiff herself cited *Gruber* in her motion), but again she fails to address the underlying basis for the court's decision. She does not explain how Princeton could have removed this case before it denied liability and realignment became appropriate.[2] The Court is persuaded to follow *Gruber* and the cases on which that court relied, and it therefore concludes that Princeton's 30-day removal clock did not start upon service on the Commissioner on March 31 for that reason as well.

---

[2] Indeed, plaintiff in effect argues that the case is still not removable, as she opposes realignment in arguing that the lack of consent from the judgment debtor makes removal improper here. As discussed below, the Court concludes that realignment is now appropriate in this case.

Plaintiff also argues that even if the 30-day removal period did not begin upon service on the Commissioner, it began in 2024, when correspondence from plaintiff's counsel ("other paper" for the purpose of applying Section 1446(b)(3)) gave Princeton notice of the underlying tort suit against Princeton's insured. Princeton was not a party to the suit then, however, and so it could not have removed the action at that time, and the 30-day clock could not have started to run. Princeton did not receive notice of a potentially-removeable claim against it until it received the order of garnishment. Plaintiff has not cited any authority suggesting that a case may become removeable before any claim has been asserted against the removing party or before that party receives notice of such a claim. Plaintiff has cited *Gruber* in arguing that receipt of an "other paper" may trigger the removal clock under Section 1446(b)(3); but in that case the "other paper" was the order of garnishment itself, and the court held at any rate that the removal period did not start with the receipt of that order (as the case was not removeable until the garnishee denied liability in its answer). *See Gruber*, 229 F. Supp. 3d at 1250-53. The same result is appropriate here, as plaintiff has not explained how Princeton had notice of a removeable claim against it more than 30 days before the removal.

Finally, plaintiff insists that the Court should apply the removal deadline based on substance, not mere formalities as argued by Princeton. It is plaintiff, however, who seeks to apply the removal statute strictly based on the formality of service upon a statutory agent, without regard to the substantive reality that Princeton did not receive notice of any potentially-removeable claim against it until April 21, 11 days before it acted to remove the case to federal court. The Court concludes that Princeton timely removed the case to

this Court, and it therefore denies plaintiff's motion for remand on the basis of untimeliness.

### B.    *Direct Action Exception*

Plaintiff next seeks remand on the basis of her argument that the case falls within the "direct action" exception to diversity jurisdiction.  That exception states that for the purposes of determining diversity jurisdiction, a corporation is deemed a citizen of the states in which it is incorporated and in which it has its principal place of business, "except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall [also] be deemed a citizen of . . . every State . . . of which the insured is a citizen."  *See* 28 U.S.C. § 1332(c)(1).  Plaintiff argues that the present case is a "direct action" under this statute, with the result that Princeton is deemed a citizen of Kansas, like its insured A.N., and federal diversity jurisdiction is therefore lacking here.  Plaintiff argues that the case is a "direct action" against Princeton because, after she obtained a judgment against the original defendant tortfeasor, that defendant is no longer an active party in the litigation, and the case is proceeding effectively as an action only against insurer Princeton.

In support of this argument in her motion, plaintiff cites only *Northbrook National Insurance Co. v. Brewer*, 493 U.S. 6 (1989), in which the Supreme Court discussed the "direct action" exception in holding that the exception did not apply to an action by (not against) an insurer.  *See id.* at 9-13.  In that case, however, the Supreme Court discussed the legislative history of the exception, which reveals that Congress was intending to

address an increase in federal diversity cases resulting from Louisiana's adoption of a direct action statute, which permitted an injured party to sue the tortfeasor's insurer directly without joining the tortfeasor to the suit as a defendant. *See id.* at 9-10 (citing legislative sources). Plaintiff has not identified any such direct action statute enacted in Kansas. To the contrary, plaintiff did join the tortfeasor as a defendant in this suit, and the tortfeasor was a party when the state district court ruled on the issue of liability for the alleged tort. Thus, this action does not meet the exception's requirement of an action to which the insured was not joined as a party.

In her reply brief, plaintiff argues that a 1966 case cited by Princeton in opposition "predates the more comprehensive interpretation adopted by the Tenth Circuit recognizing that a garnishment action in which the insurer is identified as the sole payor following a judgment against the insured falls squarely within the ambit of § 1332(c)(1)." Plaintiff has failed to cite any such Tenth Circuit authority, however. She cites two cases from *district courts* within the Tenth Circuit, but neither case is helpful to her position, as in each the court concluded that an action against an insurer did *not* fall within the direct action exception. The action at issue in *Master v. Allstate Ins. Co.*, 2006 WL 1041702 (D. Colo. Apr. 19, 2006), differs from the present case because there the *insured* had sued the insurer for coverage. *See id.* The court noted that the weight of authority held that such a suit did not fall within the exception, which applies only when "an injured party is permitted to sue directly the *tortfeasor's* liability insurer, when the tortfeasor himself was not joined as a defendant." *See id.* at *2. In the present case, the tortfeasor *was* joined as a defendant, and thus the exception does not apply. In *KB Home Colo., Inc. v. State Nat'l Ins. Co.*, 2012

WL 385595 (D. Colo. Feb. 6, 2012), the court concluded that the action before it did not fall within the exception because the plaintiff's litigation against the insured had already been completed, and therefore the plaintiff did not litigate the underlying tort liability in the suit against the insurer, as required under the exception. *See id.* at *4. Similarly, in the present case, plaintiff did not litigate the underlying tort liability in a suit directly against the insurer without the presence of the insured. The *KB Home* court further noted that most courts, including the Tenth Circuit, have construed the term "direct action" narrowly. *See id.* at *3 (citing *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 847 (10th Cir. 1988)).

In citing these Colorado cases, plaintiff relies on each court's statement that a direct action is limited to the situation in which the insurer's status is that of a payor of a judgment based on the negligence of one of its own insureds. *See Master*, 2006 WL 1041702, at *2; *KB Home*, 2012 WL 385595, at *3. The fact that the present case might satisfy that limitation, however, does not negate the additional requirement that the tortfeasor has not been included in the suit resolving the issue of that tortfeasor's liability (on which the insurance coverage claim is based). As the court in *KB Home* noted, "the fact that an insurer is a direct party in a lawsuit does not mean that a lawsuit is necessarily a direct action under § 1332(c)(1)." *See* 2012 WL 385595, at *3.

Finally, the Court notes that the Tenth Circuit has in fact resolved this issue against plaintiff's position, albeit in an unpublished opinion. *See Lundahl v. American Bankers Ins. Co. of Fla.*, 610 F. App'x 734 (10th Cir. 2015) (unpub. op.). In *Lundahl*, the Tenth Circuit affirmed the district court's finding that the exception applies only to an action by an injured party against the insured alone. *See id.* at 736. In that case – as in the present

11

case – the plaintiff first proceeded against the insured tortfeasor alone, obtaining a judgment, then the plaintiff sought to collect from an insurer. *See id.* In rejecting application of the exception, the Tenth Circuit cited another case for its holding that "garnishment proceedings are not direct actions within the meaning of § 1332(c)(1)." *See id.* (citing *Monroe v. Roedder*, 583 F. Supp. 2d 1031, 1035 (E.D. Mo. 2008)). This unpublished case does not serve as binding precedent; but the Court predicts that the Tenth Circuit would rule the same way in the present case, based on the text of the statute, the Supreme Court's explanation of the statute's legislative history, the authority cited in *Lundahl*, and the complete absence of contrary authority from plaintiff. Accordingly, the Court reject's plaintiff's argument that the present case is not removeable because it is a "direct action" under Section 1332(c)(1).

### C.  *Allegation of Facts Establishing Diversity*

In a new argument in her reply brief in support of remand, plaintiff notes that although Princeton claimed diversity in its removal notice based on its Delaware incorporation and New Jersey place of business, the disclosure statement that it cited in support of that statement (attached to the notice) does not actually state that Princeton is a corporation. Plaintiff argues that Princeton's citizenship is therefore unclear and that remand is appropriate because Princeton failed to allege the relevant facts sufficiently.

The Court rejects this argument, which borders on the frivolous.[3] First, the Court does not ordinarily consider an argument raised for the first time in a reply brief. *See U.S.*

---

[3] Plaintiff has not explained how this argument is consistent with her plea to enforce the substance of the removal statute over mere formalities.

*Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (Lungstrum, J.) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)).  Moreover, this argument clearly lacks merit.  Princeton *did* allege that it was a corporation in its notice of removal, and plaintiff has not cited any authority suggesting that such a factual allegation, if not disputed, is not sufficient.  In the only case cited by plaintiff, the court found a lack of diversity as a factual matter based on evidence. *See Birdsong v. Westglen Endoscopy Ctr., L.L.C.*, 176 F. Supp. 2d 1245, 1248-49 (D. Kan. 2001).  There is no factual dispute here, however, and Princeton's disclosure statement does *not* create ambiguity as plaintiff contends.  In that document, Princeton describes itself as a "Delaware company," and that description does not on its face call into question Princeton's unambiguous statement that it was incorporated in Delaware.  Nor has plaintiff shown that any factual dispute exists here, as plaintiff has utterly failed to provide any evidence (or even to make the allegation) that Princeton is not in fact a corporation.  To the contrary, in analyzing the citizenship of the parties in her motion, plaintiff expressly relies on the fact that Princeton is a Delaware insurer with its principal place of business in New Jersey.  Finally, the Court could also take judicial notice of Delaware public records that confirm Princeton's corporate status.  There is no basis to find a lack of diversity between plaintiff and Princeton.

### D.    *Unanimity Requirement*

Plaintiff also argues that removal here does not satisfy the removal statute's unanimity requirement, which requires the consent of "all defendants who have been properly joined."  *See* 28 U.S.C. § 1446(b)(2)(A).  Plaintiff relies on the fact that the

insured, the judgment debtor in this case, did not join in or consent to the removal in this case. Of course, absent realignment of the judgment debtor to the side of plaintiff, there would also be a lack of complete diversity here as required, as the judgment debtor is a citizen of Kansas. The Court rejects this argument, however.

Plaintiff concedes that federal courts, including those in this district, "sometimes realign the debtor with the judgment creditor when assessing diversity jurisdiction." Plaintiff nevertheless argues that the Court should not realign the parties, but instead should simply apply the language of the statute, which requires the consent of "all defendants." *See* 28 U.S.C. § 1446(b)(2)(A). Plaintiff has not cited any authority supporting that position or allowing remand based on a lack of diversity or a lack of consent in this particular situation.[4]

The Court again agrees with the analysis of the court in *Handshumaker*. *See* 2015 WL 5032054, at *3-4. That court followed other cases from this district in holding that a garnishment is a civil action under Kansas law that is separate and distinct from the underlying tort action; that such a new coverage claim could not have been litigated together with the tort action; and that the judgment debtor is therefore considered a nominal party for this purpose, whose consent to removal is not required. *See id.* (citing, *inter alia*, *Smotherman v. Caswell*, 755 F. Supp. 346, 349-50 (D. Kan. 1990), and *Meyer v. Fink*, 2014 WL 5149219 (D. Kan. Oct. 14, 2014)); s*ee also Paxson v. Estate of Lane*, 2024 WL 4227246, at *2 (D. Kan. Sept. 18, 2024) ("In determining whether diversity jurisdiction

---

[4]  Plaintiff did not address this issue in her reply brief; thus she has offered no argument to counter the authority favoring realignment that Princeton cites.

exists in removed garnishment actions, this Court has consistently realigned parties so that a judgment-debtor is aligned with a judgment-creditor against a garnishee."). The Court follows the practice of the courts in this district in holding that the consent of the judgment debtor, a nominal party in this garnishment action, was not required for removal in this case.[5]

### E.    *Lack of Certificate or Bond*

Finally, plaintiff argues that Princeton should not be permitted to remove this case because it did not first post a bond or obtain a certificate of authority to transact business in the state pursuant to K.S.A. § 40-2003(a). Based on the same failure to post a bond or obtain a certificate, plaintiff has moved to strike Princeton's filings in the case. In that motion, plaintiff moves to strike "all pleadings filed by" Princeton, but she specifically targets Princeton's notice of removal and its answer to the garnishment that it sent to plaintiff (but did not file); and plaintiff seemingly seeks to strike all documents filed by Princeton (whether or not they constitute "pleadings"), including Princeton's responses to the present motions. In the alternative to striking the documents, plaintiff requests that the matter be stayed, pursuant to K.S.A § 40-2003(b), so that Princeton may comply with the bond-or-certificate requirement.

The statute at issue, K.S.A. § 40-2003(a), provides as follows:

> Before any unauthorized foreign or alien insurer shall file or cause to be filed any pleading in any action, suit or proceeding instituted against it, such unauthorized insurer shall [(1)] deposit with the clerk of the court in which

---

[5]  The Court also agrees with the court in *Gruber* that there need not first have been an order of realignment in order to establish the required diversity. *See Gruber*, 229 F. Supp. 3d at 1252 (citing, *inter alia*, *Handshumaker*).

such action, suit or proceeding is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action; or (2) procure a certificate of authority to transact the business of insurance in this state.

*See id.* Sections 40-2001 through 40-2006 constitute the "Unauthorized Insurers Process Act" (hereinafter "the Act"). *See id.* § 40-2006.

The Court first addresses and rejects Princeton's argument that it is not subject to this requirement of the Act because it is not an "unauthorized" insurer. Princeton notes that the Act does not define "unauthorized", and it argues that it should not be deemed unauthorized for purposes of the Act because it is on the list (after having filed an annual statement as required) maintained by the Commissioner of "eligible nonadmitted insurers" who may issue certain insurance policies in Kansas, pursuant to K.S.A. § 40-246e. "Nonadmitted insurer" in that context, however, is expressly defined to mean "an insurer that is not authorized or admitted to transact the business of insurance" under Kansas law. *See id.* § 40-246i(c). Thus, Princeton's inclusion on Section 40-246e's list actually indicates that Princeton is "not authorized" to transact business, which in fact supports plaintiff's argument that Princeton is an "unauthorized" insurer under the Act.

The provisions of the Act as a whole also weigh against Princeton's argument. The purpose of the Act is to subject certain insurers to the jurisdiction of Kansas courts, namely insurers that have issued policies in Kansas "while not authorized to do business" in the state. *See id.* § 40-2001. The Act provides that the transaction of insurance business in the state, including the issuance of insurance policies, constitutes appointment by an "unauthorized" foreign insurer of the Insurance Commissioner to accept service on the

16

insurer's behalf.  *See id.* § 40-2002(a).  Thus, the fact that Princeton transacts business in Kansas does not prevent it from being considered "unauthorized" for purposes of this Act. In addition, K.S.A. § 40-218(a) provides that an insurer, on applying for "authority" to transact business in Kansas, must file a written consent that actions or garnishment proceedings may be commenced against it in Kansas.  Thus it is most reasonable to interpret the Act as meaning that an insurer is "unauthorized" if it has not obtained "authority" to transact business in the state by filing the written consent.  Princeton does not dispute that it has not filed such written consent with the Commissioner.

Princeton also notes that the Commissioner, in its second letter to Princeton with the garnishment order, referred to the Commissioner's duty under K.S.A. § 40-218(b) to forward service of process to an insurer, and it argues therefore that service was made on it under Section 40-218, and thus not under Section 40-2002 of the Act.  The Commissioner's original proof of service filed in the state court, however, states that service was made on Princeton pursuant to K.S.A. § 40-2002; and the instructions served on Princeton included a 14-day deadline, not the 40-day deadline that would apply in the case of service under Section 40-218(a).  *See* K.S.A. §§ 40-218(a), 40-2002(b).  In addition, unlike Section 40-218(a), Section 40-218(b) is not limited merely to service on authorized insurers, *see* K.S.A. § 40-218, and thus its application to the Commissioner's service on Princeton does not mean that the Act's requirements do not also apply to it.  Accordingly, the Court rejects Princeton's argument that the Act does not apply to it because it is not an "unauthorized" insurer.

Princeton also argues that its compliance with the Act should not be required in this case because the purpose of the Act – subjecting insurers to the jurisdiction of Kansas courts – has been met here, as Princeton consented to the jurisdiction of this Court when it removed the case. Princeton relies on *Youell v. Grimes*, 203 F.R.D. 503 (D. Kan. 2001), in which the court found no basis to apply the Act and its bond requirement with respect to a counterclaim because the insurer had already submitted himself to the court's jurisdiction by bringing the case in that court. *See id.* at 511. In that case, however, the court also determined that the Act did not apply for a separate reason, *see id.*, and the case may be further distinguished from the present case by the fact that Princeton did not initiate the litigation of this case in the first place. Moreover, the Act includes a bond requirement, which suggests that the purpose of the Act is also to ensure that an insurer can satisfy a judgment against it, and that purpose is not obviated by Princeton's appearance in this Court. The Court thus declines to ignore a plain requirement of the Act on this basis.

Princeton next cites K.S.A. § 40-2702(c), which states that "[t]he failure of an insurer transacting business in this state to obtain a certificate of authority from the commissioner of insurance . . . shall not prevent such insurer from defending any action at law or suit in equity in any court of this state." *See id.* In response to this argument, plaintiff appears to concede that, under this statute, Princeton's failure to obtain a certificate would not prevent its defense of the present suit – presumably including its removal of the case. As plaintiff points out, however, this statute does not excuse the failure to post a bond, and Section 40-2003 required Princeton, as an unauthorized insurer, to obtain a certificate or post a bond before it could "file" any "pleading".

Princeton argues that under *Erie* principles, the bond requirement would not apply here, in federal court, because it governs a matter of procedure, not substantive law. *See Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (in a diversity case, "substantive issues are controlled by state law and procedural issues are controlled by federal law") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Princeton argues in the alternative that, if the bond requirement does apply here as a matter of substantive law, it should be permitted to post a bond at this time. *See* K.S.A. § 40-2003(b) (if service has been made on the Commissioner pursuant to Section 40-2002, the court may order such postponement as necessary to afford the defendant a reasonable opportunity to comply with the bond-or-certificate requirement). Neither argument by Princeton, however, addresses the issue whether Princeton was in compliance with the Act at the time it effected the removal of this case.

The Court then moves to plaintiff's argument that Princeton's failure to post a bond effectively nullifies the removal. Plaintiff has not cited any authority to support the argument that a failure to comply with such a requirement of state law prior to removal may somehow invalidate the removal. Despite that lack of authority, however, the Court need not resolve the issue because it concludes that Princeton did not in fact subject itself to any bond requirement while the case was in state court.

As noted above, K.S.A. § 40-2003(a) states that an unauthorized foreign insurer must procure a certificate of authority or post a bond before it shall "file" any "pleading" in any action against it. It appears that Princeton did not file any document with the state court before it filed its notice of removal, as its garnishment answer was sent to plaintiff

but not filed with the state court. Plaintiff argues that the answer is effectively a pleading because it asserts defenses, and she notes that Princeton's answer was included as an exhibit to the notice of removal that was filed in this Court.[6]

Nevertheless, the Court cannot conclude that the condition of a "filed" "pleading" has been satisfied, such that a bond requirement was imposed on Princeton. "Pleading" is defined in the Kansas statutes only to include petitions and answers to petitions. *See* K.S.A. § 60-207(a); *see also Sperry v. McKune*, 305 Kan. 469, 481 (2016) (K.S.A. § 60-207(a) provides the statutory definition of a "pleading"). Thus, Princeton's statutory garnishment answer, sent in response to an order of garnishment, would not constitute a "pleading" under the Kansas statutes. Nor would Princeton's removal notice constitute a pleading. *See Doe v. Kansas State Univ.*, 61 Kan. App. 2d 128, 148-49 (2021) (for the purpose of applying a different statute, a motion to dismiss is not a "pleading") (citing K.S.A. § 60-207).

Moreover, K.S.A. § 60-736 – the statute that contains the 14-day answer deadline that plaintiff seeks to enforce in its motion for a default judgment – provides that a garnishee's answer to a garnishment order is to be completed in accordance with the accompanying instructions and then sent to the judgment creditor's attorney. *See id.* § 60-736(b)(1). The form answer in this case instructed Princeton, in bolded capital letters, not to send the completed answer to the court clerk for filing. Then, under the state's statutory

---

[6] Neither party has provided the Court with a copy of the notice that Princeton filed in the state court upon removing the case, and thus it is unknown whether the answer was also included as an exhibit in that filing.

garnishment scheme, the judgment creditor or the judgment debtor may file within 14 days a reply disputing the answer, and a court hearing may then be scheduled.  *See id.* § 60-738(a).  Plaintiff has yet to file such a reply in opposition to Princeton's answer, either in the state court or in this Court.  Thus, Princeton's answer has still not been filed within the contemplation of these Kansas statutes.

Plaintiff notes that Princeton attached its answer to the removal that it filed, but Princeton did so merely as an exhibit in stating the case's procedural history.  That inclusion does not mean that Princeton "filed" its answer – indeed, the statutory scheme mandates that garnishee *not* file the answer, and if the answer is disputed, it is the disputing party that causes the answer to be filed (although that has not yet taken place in this case).

This construction does not run contrary to the spirit of the statutory scheme.  As noted above, that scheme also provides for a garnishee to be given a reasonable opportunity to comply with the bond requirement, *see id.* § 40-2003(b), and it does not mandate that any pre-bond document be stricken or nullified.

Accordingly, the Court agrees with Princeton that it did not subject itself to any bond requirement by filing a pleading in state court prior to its removal of the case to this Court.  The Court therefore denies plaintiff's motion to strike documents including the answer and the removal notice.  The Court also rejects Princeton's failure to post a bond as a basis to find the removal of the case to have been improper, and it therefore denies plaintiff's motion for remand.

In the alternative, plaintiff has requested that the case be stayed in this Court until Princeton posts a bond here, pursuant to K.S.A. 40-2003(b) (authorizing such a stay).  The

21

Court rejects that argument for a stay.  As discussed above, this Court does not apply Kansas state procedural law, and because the bond requirement relates to how plaintiff may enforce her rights against Princeton (instead of defining the rights themselves), it must be deemed a matter of procedure that does not apply in this diversity action in this Court.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (a rule is procedural for this purpose if it governs the manner in which a litigant's rights are enforced).

Plaintiff cites *Wade v. EMASCO Insurance Co.*, 483 F.3d 657, 666 (10th Cir. 2007), to support the following statement: "As the Tenth Circuit has noted, when state law provides the rule of decision, federal courts sitting in diversity must apply those rules *in full*, including remedial and enforcement provisions integral to the substantive rights." (Emphasis in original.)  The Tenth Circuit made no such statement in *Wade*, however.  *See id.*  Nor did the Tenth Circuit in that case address any issue concerning whether a state law was procedural or substantive for the purpose of applying *Erie*.  *See id.*[7]  Plaintiff also notes that the court in *Youell* considered (and rejected) enforcement of this bond requirement without dismissing the matter as one of state procedural law under *Erie*.  *See Youell*, 203 F.R.D. at 510-11.  That court's failure to rely on *Erie*, however, does not mean that that court implicitly determined that the bond requirement presented a matter of state substantive law; rather, the court did not express any opinion on the matter.

---

[7]  The court in *Wade* did cite *Erie* once, but only in support of its general statement that in a diversity case, the federal court's task is "not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law."  *See Wade*, 483 F.3d at 665 (internal quotations omitted).

Plaintiff has not cited any case in which a court has held that an initial bond requirement under state law may be a substantive law that must be applied in federal court in a diversity case. Nor has plaintiff addressed the Supreme Court standard set forth above, under which a matter is procedural if it relates merely to the enforcement of the plaintiff's rights. Accordingly, the Court concludes that once this case reached federal court, the bond requirement of K.S.A. § 40-2003(a) ceased to apply, and the Court therefore denies plaintiff's alternative request for a stay for the initiation of bond proceedings.[8]

### III.    Motion for Default Judgment

Having denied the motion for remand, the Court considers the amended motion for default judgment that plaintiff originally filed in state court. The parties completed briefing on the motion in this Court.

In her amended motion, plaintiff argued that Princeton was served with the order of garnishment on April 11, that Princeton's answer was due on April 18, and that Princeton's delivery of the answer on April 28 was therefore untimely. In her reply brief, however, plaintiff argued that Princeton was served on March 31, when she delivered the order of garnishment and form answer and instructions to the Insurance Commissioner (for forwarding to Princeton); and that Princeton's answer was due on April 14, pursuant to the

---

[8]  Because the Court denies plaintiff's motion for remand, it also denies her request for an award of attorney fees pursuant to 28 U.S.C. § 1447(c). Plaintiff also references K.S.A. § 40-2004, which provides for an award of fees if judgment is rendered against an unauthorized foreign insurer, but because the litigation is ongoing, consideration of fees under that statute would be premature.

14-day deadline in K.S.A. § 60-736. In light of such new arguments in plaintiff's reply brief, the Court granted leave to the parties to file sur-reply and sur-sur-reply briefs concerning the motion for default judgment.

K.S.A. 60-736(b) provides that a garnishee must complete the answer in accordance with the attached instructions (and then send the answer to the judgment creditor) "[w]ithin 14 days after service, other than that required pursuant to K.S.A. 40-218 . . . upon a garnishee of an order of garnishment." *See id.* Princeton argues that the 14-day deadline does not apply here because it was served pursuant to Section 40-218, which imposes a deadline for the answer of not less than 40 days from the date the order of garnishment is served on the Commissioner. *See id.* § 40-218(a). Section 40-218(a), however, deals specifically with the requirement that an insurer who applies for authority to transact business must execute a consent that a garnishment proceeding against it may be commenced by service on the Commissioner, and thus the minimum-40-day deadline after service on the Commissioner in that same subsection must be construed to apply in the case of service on an authorized insurer who has executed such a consent. As discussed above, Princeton has not executed such a consent and is therefore an unauthorized insurer; thus, service on Princeton was *not* accomplished pursuant to Section 40-218(a). Rather service was made on Princeton pursuant to K.S.A. § 40-2002 (part of the Act, which specifically addresses service upon unauthorized insurers), and therefore the usual 14-day deadline under K.S.A. § 60-736 did apply in this case.

To determine whether Princeton completed its answer "within 14 days after service" as required under Section 60-736, the Court must identify the date of "service" of the order

of garnishment upon Princeton. That statute does not address how that date is determined. *See id.* § 60-736. Section 40-2002, pursuant to which plaintiff attempted service in this case, provides that service of process upon an unauthorized insurer shall be made by delivering that process to the Commissioner, who shall "forthwith" mail that process to the insurer. *See id.* § 40-2002(b). The statute does not state that service is deemed accomplished upon delivery to the Commissioner, however. *See id.* It is significant, moreover, that this statute does not use the language found in Section 40-218(a) regarding service on an authorized insurer, which sets a minimum answer deadline counted from service of the order of garnishment *on the Commissioner*. *See id.* § 40-218(a). Thus, the most reasonable interpretation is that Section 60-736's answer deadline of 14 days after service *on the insurer* is counted from the insurer's actual receipt of the process, even if such service is made pursuant to Section 40-2002(b). Such a construction makes sense for application of a much-shorter deadline (14 days versus a minimum of 40 days), especially since mail delivery issues could delay the insurer's actual receipt of the process from the Commissioner (as occurred in this case). Indeed, plaintiff is arguing in this case that Princeton's answer was due *even before it received the process from the Commissioner*. Plaintiff's construction is not the most reasonable construction of the statutes, especially in light of the fact that in Section 60-736 the Kansas Legislature did not explicitly count the deadline from delivery to the Commissioner, as it did in Section 40-218.[9]

---

[9] Plaintiff relies on *Vera v. Lumbermen's Mutual Casualty Co.*, 2004 WL 957837 (D. Kan. Jan. 26, 2004), in which the court concluded that service was effected on the date of delivery to the Commissioner for the purpose of applying the 30-day removal deadline. Continued…

The Court's construction is also supported by the fact that the form instructions provided to the garnishee state that the answer must be completed "within 14 days after the Garnishment Order is served on you."  A garnishee would most reasonably read that deadline as running from the date of receipt, rather than from the date the judgment creditor delivered the order to the Commissioner – a date that would likely be unknown to the garnishee.  In the case of service under K.S.A. § 40-218(a), the minimum 40-day answer deadline is counted from the date of delivery to the Commissioner, but the process in such case shall require the garnishee to answer by a date certain, which date is at least 40 days from date of the delivery to the Commissioner, *see id.*; thus, the answer deadline is clear to the garnishee in such case.  Under plaintiff's construction, however, the answer deadline would not necessarily be known to the garnishee in the case of service under K.S.A. § 40-2002(b), and the Court therefore finds that construction not to be a reasonable one.  Thus, plaintiff has not shown that Princeton's answer was untimely.

The Court concludes that default judgment is not appropriate here for a number of other reasons as well.  Most significantly, plaintiff has not met the requirements for completion of service under K.S.A. § 40-2002(b).  That statute provides that service on an insurer thereunder is "sufficient" provided the plaintiff (1) send a copy of the process to the defendant by registered mail within 10 days after delivery to the Commissioner and (2)

---

*See id.* at *1-2.  As discussed above, this Court has rejected that conclusion in *Vera* in favor of the rule that the removal period runs from the date of actual receipt by the insurer, not from the date of service on a statutory agent.  Moreover, for present purposes, *Vera* is not persuasive because that court specifically addressed service under Section 40-218(a), not service under Section 40-2002(b).  *See id.*

file an affidavit of compliance with the court before the date the defendant is required to appear. *See id.* Plaintiff does not dispute the fact that she neither sent a copy of the process to Princeton nor filed the affidavit of compliance.

Plaintiff argues that she was not required to send a copy of the process to Princeton because the statute requires the copy be sent to the "defendant", not to the insurer-garnishee. The Court rejects that argument. As noted above, the entire Act is meant to address service of process on an insurer, and references to the "defendant" are clearly meant to refer to the insurer on which process is being served. Thus Section 2002(b) requires the Commissioner forthwith to mail the process to the "defendant", and the plaintiff's affidavit of compliance is due before the date the "defendant" is required to appear. *See id.* The statute would not make sense if such references were only to a judgment debtor (defendant in the underlying suit) or only to defendants to the tort claim (in which case the statute would instead refer to "defendants" in the plural) and not to the insurer on whom process is being served. Moreover, even if the Court applied plaintiff's interpretation, she still failed to comply because she did not send a copy of the process to the judgment debtor defendant by registered mail.[10] Accordingly, plaintiff failed to comply with this requirement for sufficient service under the statute, and thus there is no basis to find that Princeton failed to comply with a deadline counted from such service.

---

[10] Plaintiff argues that such notice to the judgment debtor was unnecessary because he would have had notice of the order of garnishment through electronic service, but of course the statute explicitly requires the use of registered mail. *See* K.S.A. § 40-2002(b).

Plaintiff also disputes that she has failed to comply with the filed-affidavit requirement, arguing that such affidavit must only be filed "on or before the date the defendant is required to appear," *see id.*, and that no hearing has yet taken place. The Court notes that plaintiff has *still* not filed the required affidavit, even after Princeton raised this issue of non-compliance in its briefs. At any rate, even assuming that plaintiff still had time to file the affidavit to meet this requirement (although she would be unable to swear in the affidavit to her compliance with the mailing requirement), that would mean that service has not yet been shown to be sufficient, and thus Princeton could not yet be deemed to be in default. In fact, the same statute provides that "[n]o plaintiff or complainant shall be entitled to judgment by default under this section until the expiration of thirty days from the date of the filing of the affidavit of compliance." *See id.* § 40-2002(d). Plaintiff has not filed the affidavit of compliance; thus, under the very statute on which plaintiff relies, default judgment would not be appropriate at this time (and certainly was not appropriate at the time plaintiff filed the motion), even if Princeton's answer could be considered late.

Finally, even if Princeton's answer could be deemed untimely (despite the issues raised above), entry of default judgment would not be appropriate here. As the Tenth Circuit has stated, "our legal system strongly prefers to decide cases on their merits," *see Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011), and Princeton has completed and delivered its answer to the order of garnishment. Moreover, the Court does not agree that Princeton demonstrated a lack of diligence in this case. Plaintiff blames Princeton for not keeping its address current with the Commissioner, but of course plaintiff is seeking to enforce a deadline imposed in a statute providing for service on insurers who are *not*

authorized by the state. Once Princeton actually received the order of garnishment, it answered with due diligence.

Plaintiff also relies on K.S.A. § 60-741 in seeking default. Even if the Court were inclined to apply that state statute concerning default (it is not, as default presents a matter of procedure), default judgment is *not* mandatory under that statute, as plaintiff suggests; rather, the statute provides that a court "may" grant judgment if a garnishee fails to answer in a timely fashion. *See id.* In this case, even if it were persuaded that Princeton's answer was late (it has not been so persuaded), the Court would in its discretion decline to grant a default judgment, so that this case may be decided on its merits. Accordingly, the Court denies plaintiff's amended motion for a default judgment

## IV.    Realignment of the Parties and Further Proceedings

As discussed above, the Court deems the judgment debtor to be a nominal party, and his interests are more properly aligned with those of plaintiff. Accordingly, the Court exercises its discretion to realign the parties as set forth in the caption above. *See Handshumaker*, 2015 WL 5032054, at *4 (citing *Smotherman*, 755 F. Supp. at 348).

In addition, going forward the present action is governed by the federal rules regarding pleadings. To this point, plaintiff has served the garnishment order on Princeton, and Princeton has completed a form answer, but plaintiff has not filed a reply disputing the answer (as contemplated in the garnishment statutes), and thus there is no pleading setting forth plaintiff's legal claim against Princeton or Princeton's answers and defenses. Accordingly, the Court in its discretion orders the parties to file pleadings as follows:  on

or before **July 30, 2025**, plaintiff shall file an amended complaint setting forth her legal claims against Princeton in accordance with the requirements of Fed. R. Civ. P. 8(a) (and any applicable local rules); and Princeton shall file its answer or otherwise respond to the amended complaint within **21 days** after its filing. The case will then proceed pursuant to the Court's usual procedures.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion to strike (Doc. # 8) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for remand (Doc. # 6) is hereby **denied**.

IT IS FURTHER ORDERED THAT plaintiff's amended motion for default judgment (Doc. # 11) is hereby **denied**, and plaintiff's original motion for default judgment (Doc. # 10) is hereby **denied as moot**.

IT IS FURTHER ORDERED THAT on or before **July 30, 2025**, plaintiff L.B. shall file an amended complaint setting forth her legal claims against Princeton in accordance with the requirements of Fed. R. Civ. P. 8(a) (and any applicable local rules); and defendant Princeton shall file its answer or otherwise respond to the amended complaint within **21 days** after its filing.

IT IS SO ORDERED.

Dated this 9th day of July, 2025, in Kansas City, Kansas.

<u>/s/   John W. Lungstrum</u>
Hon. John W. Lungstrum
United States District Judge